### In the Matter of William J. STOECKER, Debtor.

### Appeal of Thomas E. RALEIGH, as Chapter 7 Trustee for the Estate of William J. Stoecker.

### No. 92–3505.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1993.

Decided Sept. 20, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 14, 1993.

1024

Robert Radasevich (argued), James H. Bowhay, Tracy L. Potter, Neal, Gerber & Eisenberg, Chicago, IL, for appellant.

Kenneth W. Bley, Keevan D. Morgan, Durkin, Morgan, Roberts, Barnett & Bley, Chicago, IL, for appellee.

Before POSNER and RIPPLE, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

POSNER, Circuit Judge.

This bankruptcy appeal presents difficult questions concerning the interpretation of a settlement agreement and the application of the doctrine of res judicata in bankruptcy. There is also an issue of appellate jurisdiction.

The parties are the Bank of Bellwood and the trustee in bankruptcy of William J. Stoecker, a substantial businessman to whom the bank had lent $750,000 on his unsecured promissory note. In December 1988 and January 1989, Stoecker paid the bank a total of some $16,000 in interest. The loan came due on February 1, 1989. When Stoecker failed to pay it by the end of that day, the bank sought and on February 6 obtained a judgment against him by confession for $750,000. Realizing that Stoecker was on the verge of bankruptcy, the bank filed its judgment as a lien against as many different assets of his as it could find. Stoecker was petitioned into bankruptcy on February 21, and in August of that year the bank filed with the bankruptcy court a proof of secured claim for $750,000, reciting that the bank had various judgment liens against the assets of the bankrupt estate.

The bankruptcy proceeding was complex and protracted, and had not been completed when in 1991 the trustee filed an adversary complaint against the bank, seeking to recover for the bankrupt estate, as a preferential transfer, the $16,000 in interest, which had been paid within 90 days before the declaration of bankruptcy. 11 U.S.C. § 547(b). Before the bank filed its answer to the complaint, the parties settled. In exchange for $11,000 and the bank's release of all "claims, demands, or causes of action" that it might have against the bankrupt estate except its proof of secured claim, upon which no action had been taken as yet by the bankruptcy court, the trustee agreed to release all "claims, demands, or causes of action" that he might have against the bank. The bankruptcy court approved the settlement in June.

Several months later the trustee filed objections to the bank's proof of secured claim, arguing that any judgment liens that the bank had obtained back in February 1989 were preferential transfers made within 90 days before bankruptcy and therefore invalid; alternatively that the proof of claim was invalid because filed without the documentation required by Rule 3001 of the Bankruptcy Rules of Procedure. The bank replied that the trustee's objection was a "claim" that had been released by the settlement agreement and that in any event the settlement barred the objection by operation of the doctrine of res judicata because the objection grew out of the same transaction as the trustee's adversary complaint to recover the interest payments. The bankruptcy judge agreed with the bank on both points but then on his own initiative threw out the bank's proof of claim because the bank had failed to attach the requisite documentation (primarily the

* Hon. William H. Timbers of the Second Circuit, sitting by designation.

judgment liens themselves). 143 B.R. 118 (Bankr.N.D.Ill.1992). On appeal the district judge reversed the bankruptcy judge's action on the proof of claim, agreed that the trustee's objection was barred by the settlement agreement, found it unnecessary to decide whether it was also barred by res judicata, and remanded the case to the bankruptcy court to enable the bank to submit the required documents. 143 B.R. 879 (N.D.Ill. 1992).

The trustee appeals, and we must first decide whether the decision from which he is appealing is final, 28 U.S.C. § 158(d), notwithstanding the remand by the district court. Interlocutory orders of district courts sitting as appellate courts in bankruptcy are appealable if they meet the standards of 28 U.S.C. § 1292, see *Connecticut National Bank v. Germain*, —— U.S. ——, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992), but the district court's order in this case does not meet those standards. Nevertheless we think it is appealable because final—though not on the ground that if the order of the bankruptcy court is final the order by the district court disposing of the appeal from the bankruptcy court's order is automatically final as well no matter what the district court does. That is the view of some circuits, *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1378 (9th Cir. 1985), but not of this one. *In re Klein*, 940 F.2d 1075, 1077 (7th Cir.1991); *In re Weber*, 892 F.2d 534, 537–38 (7th Cir.1989); *In re Boomgarden*, 780 F.2d 657, 659–60 (7th Cir. 1985); *In re Riggsby*, 745 F.2d 1153 (7th Cir.1984). No matter. The district court's decision in this case was final in the conventional sense, notwithstanding the remand. By establishing that the bank has a secured claim for $750,000 against the assets of the bankrupt estate, the decision resolved the dispute between creditor and debtor and is therefore final. *In re Szekely*, 936 F.2d 897, 899–900 (7th Cir.1991); *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir.1989). The remand is purely ministerial, as there is no doubt that the requisite documentation exists—indeed, the district court's reason for reversing the bankruptcy judge's disallowance of the claim is that the documents had long been part of the record of the bankruptcy proceeding and were known by the trustee. No one had been harmed by the omission to staple them to the proof of claim. The bankruptcy judge's ruling disallowing the proof of claim without leave to amend had thus been hypertechnical. A remand to correct a purely formal defect is the quintessential ministerial remand, for it is exceedingly unlikely to generate a further appeal and therefore raise the specter, against which the final-decision rule is aimed, of piecemeal appeals. *In re Fox*, 762 F.2d 54, 55 (7th Cir.1985); *Parks v. Pavkovic*, 753 F.2d 1397, 1402 (7th Cir.1985).

There is a further wrinkle, though: the amended proof of claim that the bank has filed on remand pursuant to the district judge's order is for more than twice the $750,000 face amount of the original loan. The reason is that the new proof of claim includes claims for interest and for attorney's fees. The latter is not at all troublesome from the standpoint of finality. The determination of attorney's fees is a collateral matter which, even when as in this case they are claimed by virtue of contract rather than statute, does not affect the appealability of the underlying claim. *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1065 (7th Cir.1992); see also *In re Colon*, 941 F.2d 242, 244–45 (3d Cir.1991). This is not because a claim of attorney's fees is unlikely to give rise to an appeal—we see a vast number of such appeals—but because, if it does, the issues presented by the appeal will be unrelated (or largely so) to the issues presented by and decided in the original appeal. The appellate court will thus be spared the burden of duplicative appeals, the burden that the term "piecemeal appeals" denotes. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202, 108 S.Ct. 1717, 1721, 100 L.Ed.2d 178 (1988).

The question whether the bank's demand for interest renders the judgment nonfinal is dicier. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1988), holds that a postjudgment motion for prejudgment interest destroys finality. The Court's reasoning was that prejudgment interest is part of the relief sought by the plaintiff to rectify the defendant's wrong.

Postjudgment interest, however, is compensation for delay in the collection of the judgment, and is therefore collateral, like the award of attorney's fees. We have a mixed bag here. The bank is seeking postpetition interest, 11 U.S.C. § 506(b), which runs from the date of the filing of the bankruptcy petition to the satisfaction of the claim in the final distribution of the bankrupt's assets, Kathryn R. Heidt, "Interest under Section 506(b) of the Bankruptcy Code: The Right, the Rate and the Relationship to Bankruptcy Policy," 1991 *Utah L.Rev.* 361, 365 and n. 19 (1991), thus straddling the judgment allowing the claim. But to make the appeal on the merits of the claim therefore await the end of the entire bankruptcy proceeding would be inconsistent with the basic approach that we and the other courts of appeals take to bankruptcy appeals, which is to treat each adversary proceeding within the overall bankruptcy proceeding as a separate, stand-alone litigation.

■ If there were issues kicking around the bankruptcy court concerning the bank's entitlement to postpetition interest or the rate at which that interest would be computed or the amount of principal to which it would be added, the disposition of the bank's claim by the district court could hardly be considered final. The trial court would not be through with the case (except for ministerial details), which is the pertinent meaning of finality. But so far as we can determine, there are no such issues. The bank's entitlement to interest under section 506(b) is not questioned, *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); nor that the interest runs from the date when the petition for bankruptcy was filed to the date when the bank's claim is paid or it gets its collateral back, 11 U.S.C. § 506(b) and Heidt, *supra*, at 365 and n. 19; nor that the interest rate is the Illinois statutory rate of interest on judgments. *Id.* at 404–05. With the computation of the interest due on the bank's state court judgment thus completely cut and dried we cannot see what purpose would be served by refusing to hear this appeal. *In re Excello Press, Inc.*, 967 F.2d 1109, 1111 (7th Cir. 1992); *Herzog Contracting Corp. v. McGowen Corp.*, *supra*, 976 F.2d at 1064; *In re*

*Prines*, 867 F.2d 478, 481 (8th Cir.1989). The case is over in the bankruptcy court except for an arithmetical calculation. Or so at least we believe; for we may be wrong about the scope of the proceeding on remand. New issues may crop up and complicate what at this point appears to be merely a tying up of some minor loose ends. The decision that a remand is ministerial, and therefore not a bar to an immediate appeal, is a prediction rather than a direction. Any nonwaived, nonbarred issues can be raised on remand, and of course decided even if they prove not to be ministerial as they had been expected to be.

■ We add that even if postpetition interest should be classified as prejudgment interest under *Osterneck*, and its postjudgment tail (that is, the postpetition interest that accrued after the district court allowed the secured claim and thus rendered judgment in the adversary proceeding) therefore disregarded, the fact that the postpetition interest to which the bank is entitled has not yet been quantified would not deprive the district court's order of finality. For this is not a case, like *Osterneck*, in which a plaintiff after judgment files a motion for prejudgment interest and the question is whether by doing so he is asking that the judgment be altered. (The Supreme Court's answer was "yes.") We spoke loosely earlier when we said that the district court's order had "establish[ed] that the bank has a secured claim for $750,000." The proper interpretation of the order is that the bank is entitled to enforce its secured claim whatever the exact amount of that claim, and this means, given section 506(b), $750,000 in principal plus interest on that principal. If that exact amount could not be ascertained mechanically—if the dimensions of the bank's entitlement were in fact uncertain—the judgment would not be final. But if the exact amount can be ascertained mechanically (and it can be here), then, as in the *Herzog* case, which is quite similar in this respect, the judgment is final.

■ Turning to the merits, we can dispose quickly of the trustee's contention that the bankruptcy judge was right to disallow

the proof of claim, without leave to amend, because compliance with Rule 3001 is "mandatory." 143 B.R. at 130. All that the rule says, so far as bears on this case, is that the filing of a proof of claim with the required documentation is prima facie evidence that the claim is valid. Fed.R.Bankr.P. 3001(c), (d), (f). If the documentation is missing, the creditor cannot rest on the proof of claim. It does not follow that he is forever barred from establishing the claim. Nothing in the principles or practicalities of bankruptcy or in the language of any rule or statute justifies so disproportionate a sanction for a harmless error. Forfeitures of valuable claims, and other heavy sanctions, should be reserved for consequential or easily concealed wrongs. *Prussner v. United States,* 896 F.2d 218, 224 (7th Cir.1990) (en banc); *Lorenzen v. Employees Retirement Plan,* 896 F.2d 228, 232 (7th Cir.1990). A creditor should therefore be allowed to amend his incomplete proof of claim (what is often called an "informal proof of claim") to comply with the requirements of Rule 3001, provided that other creditors are not harmed by the belated completion of the filing. *In re Unioil,* 962 F.2d 988, 991–93 (10th Cir.1992); *In re Unroe,* 937 F.2d 346 (7th Cir.1991); *Wilkens v. Simon Bros., Inc.,* 731 F.2d 462, 464–65 (7th Cir.1984) (per curiam); *In re South Atlantic Financial Corp.,* 767 F.2d 814, 819 (11th Cir.1985). The bankruptcy judge thought there was harm to other creditors because if the bank's claim is allowed, the entitlements of the unsecured creditors will be cut down. This is a misunderstanding of what it means for an error to be harmful in the sense of "prejudicial," that is, entitling the person harmed to complain. To say that an error is prejudicial means not that if the error is corrected someone will lose, which is almost always true, but that the error itself imposed a cost, as by misleading someone. Obviously there will be losers if the bank's claim is allowed, because the pool of assets available to the other creditors will be diminished, but the fact that the proof of claim failed to comply with Rule 3001 did not mislead or otherwise harm anyone. *In re Stavriotis,* 977 F.2d 1202, 1203–05 (7th Cir.1992), is not to the contrary; the court held that the other creditors had been surprised and prej-udiced by the belated assertion of a new claim in the guise of an amendment.

 A more difficult question is whether the settlement agreement bars the trustee's objection to the proof of secured claim. This is a question of contractual interpretation. The agreement stipulates that the law of Illinois shall govern its interpretation. Contractual stipulations concerning choice of law ordinarily are honored, *Great Lakes Overseas, Inc. v. Wah Kwong Shipping Group, Ltd.,* 990 F.2d 990, 994 (7th Cir.1993); *Sarnoff v. American Home Products Corp.,* 798 F.2d 1075, 1081 (7th Cir. 1986), and the fact that this contract is the settlement of a claim in bankruptcy does not argue for a different approach, though we can find no cases on the question. If we wanted to be hypertechnical we would first decide what jurisdiction's choice of law rule governs and then ask whether that jurisdiction would enforce the choice of law stipulation in a case such as the present. We would have to decide whether the choice of law rule in a bankruptcy case such as this is federal or state, and if the latter which state's. The fact that the contract in issue is the settlement of a bankruptcy dispute, rather than a contract made before the onset or imminent prospect of bankruptcy, might seem to point to a federal rule; but that is far from clear. *McCall–Bey v. Franzen,* 777 F.2d 1178, 1185–86 (7th Cir.1985), held that a suit to enforce a settlement of a federal civil rights suit did not arise under federal law. Subsequent cases in this court, while leaning in the same direction, treat the question as unresolved. *Morgan v. South Bend Community School Corp.,* 797 F.2d 471, 474 (7th Cir. 1986); *Dhaliwal v. Woods Division,* 930 F.2d 547, 548 (7th Cir.1991); *Fortino v. Quasar Co.,* 950 F.2d 389, 394 (7th Cir.1991), as does *Tiernan v. Devoe,* 923 F.2d 1024, 1033 n. 6 (3d Cir.1991). *Fennell v. TLB Kent Co.,* 865 F.2d 498, 501 (2d Cir.1989), leans the other way. It is clearer, however, that the federal government has no interest in the outcome of this dispute among creditors (the bank and the unsecured creditors represented by the trustee) than that it has no interest in the outcome of a dispute among parties to the settlement of a federal civil rights suit. Cf.

*Miree v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Bank of America National Trust & Savings Association v. Parnell,* 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956); *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Fore Improvement Corp. v. Selig,* 278 F.2d 143, 147 (2d Cir.1960) (Friendly, J., concurring). As for which state's choice of law rule might apply, judicial practice is not entirely consistent but most cases apply the choice of law rule of the forum state, the approach used in diversity cases. *In re Merritt Dredging Co.,* 839 F.2d 203, 205–06 (4th Cir.1988); John T. Cross, "State Choice of Law Rules in Bankruptcy," 42 *Okla.L.Rev.* 531, 543–45 (1989).

■ We need not try to resolve these issues in this case—and not only because any plausible choice of law rule would honor the stipulation that Illinois law is to govern. Where as in this case the parties do not make an issue of choice of law, we have no obligation to make an independent determination of what rule would apply if they had made an issue of the matter. *Magallanes Investment, Inc. v. Circuit Systems, Inc.,* 994 F.2d 1214, 1218 (7th Cir.1993); *Casio, Inc. v. S.M. & R. Co.,* 755 F.2d 528, 531 (7th Cir. 1985); cf. *Credit Alliance Corp. v. Campbell,* 845 F.2d 725, 727 (7th Cir.1988).

So let us turn to the interpretive question. Both parties invoke the "plain meaning" of the agreement. The bank argues that it is obvious that "claims" and (a synonym) "causes of action" include objections, since the trustee could have filed an adversary complaint—just like the complaint he filed to get back the interest—to void the judgment liens on the ground that they were preferential transfers. The trustee argues that it is obvious that "claims" do not include defenses. It is not obvious, for a legal right can usually be made the basis of either a claim or a defense. *Reiter v. Cooper,* —— U.S. ——; 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *Rudell v. Comprehensive Accounting Corp.,* 802 F.2d 926 (7th Cir.1986); *County Fuel Co. v. Equitable Bank Corp.,* 832 F.2d 290, 292 (4th Cir.1987). Although the phrase "claims, demands, or causes of action" is boilerplate language in releases, we can find no cases

applying it to a defense, or, what is the same thing by a different name, to a trustee's objection to a creditor's claim.

If the case had to be decided on the basis of which party had made a semantically more appealing argument, the bank would win. The trustee had a cause of action against the bank for voiding the judgment liens as preferences, and the settlement agreement purports to release all causes of action that the trustee might have against the bank. But the trustee has supplemented his plain-meaning argument by referring to the disparity between the consideration that he received in the settlement—$11,000—and the claim that the bank says he gave up, which was for $750,000 (not to mention the $16,000 in interest). He didn't give it all up, because he retains an unsecured claim for that amount. But he estimates the value of that claim at only $135,000, implying that—if he has a meritorious claim to the bank's security and that security is worth the full $750,000—he gave up more than $600,000 in exchange for $11,000. It is unlikely, the trustee argues, that the bankruptcy court would without further inquiry have allowed him to surrender a claim for less than two cents on the dollar. Here it becomes relevant to point out that the bankruptcy judge who approved the settlement was different from the one who interpreted the settlement to bar the trustee's objection; the former would have been a greater authority on the meaning of the settlement.

■ To all this the bank responds indignantly that in arguing about the disparity between claim and settlement the trustee has strayed outside the text of the settlement agreement without even having asked the bankruptcy court for an evidentiary hearing on the meaning of the settlement agreement. This response misconceives the burdens of production in a case like this. It is always open to a party to a contract dispute to argue that while the contract may seem clear on its face, certain background facts show that its plain meaning is not its true meaning—that the parties couldn't have meant what they seem to have said, that they must have been using words in a special way. This is the doctrine of "extrinsic ambiguity," and al-

**1030**

though its reception by the Illinois courts is not free from doubt, we have concluded that it is a part of the law of Illinois. *FDIC v. W.R. Grace & Co.*, 877 F.2d 614, 621–22 (7th Cir.1989). If—and here we come to the matter of burdens of production—the background facts claimed to create the ambiguity are undisputed, no evidentiary hearing is required to bring them before the court, although we lean to the view that where more than one inference can reasonably be drawn from the combination of text and background facts the drawing of that inference is an issue of fact rather than law. *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1438–39 (7th Cir.1993); but see *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 456 (7th Cir.1991). It is undisputed that the trustee accepted an $11,000 settlement of his $16,000 claim for interest and that the claim allegedly barred by the settlement agreement is for $750,000. There is no suggestion that the bank's liens aren't worth $750,000, or that the trustee had no reasonable basis on which to challenge them as preferences. We do not know the real value of what the trustee is alleged to have given up in the settlement. It plainly was less than $750,000, since he might have failed to invalidate the liens; but on this record we cannot say that the value was so much less that it would be reasonable to suppose that the trustee really did give it up in exchange for $11,000.

■ The trustee didn't have to request a hearing to bring these facts to the attention of the bankruptcy court. If the bank wanted a hearing in order to be able to introduce other pertinent facts, it had to ask for one and it did not. At oral argument its able counsel told us that when the bank in the settlement agreement released all its claims except the secured claim against the trustee, this wasn't just boilerplate, though we are hard pressed to imagine what other claims the bank might have against the bankrupt estate, since as far as its counsel was aware the $750,000 loan was its only transaction with Stoecker. However that may be, if there are buried facts that torpedo the trustee's argument from disparity of consideration it was the bank's burden to bring them to the surface, if need be by requesting an evidentiary hearing.

■ We grant that too liberal an application of the doctrine of extrinsic ambiguity would deprive contracting parties of the protection they sought by reducing their agreement to writing (the settlement agreement here had an integration clause). *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 607–08 (7th Cir.1993) (en banc) (plurality opinion); *FDIC v. W.R. Grace & Co., supra,* 877 F.2d at 621–22. *Grace* points out that the Illinois courts have been reluctant to invoke the doctrine in cases involving releases, where the disputed provisions usually are technical legal terms—which judges ought to be able to understand without the aid of witnesses. This is a release case. But it is a special case. The critical term, "claim," is not so clearly inclusive of defenses and objections that it is inconceivable that it was meant to exclude them, and the acknowledged disparity between what the trustee got and what he gave up, if "claim" is read more broadly, appears to be so great as to make it doubtful that either party could have thought the word was being used in its broader sense.

We suggested earlier that when the meaning of a contract may depend on extrinsic facts as well as on the text of the contract, the better view is that the question of meaning is one of fact rather than law, even if the extrinsic facts are uncontroverted. This case must therefore be returned to the bankruptcy court to redetermine the meaning of the settlement agreement on the basis of all the evidence. The court can if it wishes reopen the record. to take new evidence.

■ This resolution of the contract dispute assumes, however, that the trustee's objection to the secured claim is not independently barred by res judicata. We think it is not; that even if the adversary complaint and the objection to the proof of claim were separate lawsuits rather than successive phases within a single overall bankruptcy proceeding, the resolution of the first would not be res judicata in the second. The trustee's claim for interest was based on interest payments made within the preference period. Those payments were made in December 1988 and January 1989. The trustee's objection to the proof of secured claim is based

upon different conduct occurring at a different time: the actions of the bank, between February 6, 1989, when it obtained a judgment against Stoecker for the principal of the loan, and February 21, to obtain judgment liens against Stoecker's assets. Of course both claims (in the language of the settlement agreement) by the trustee arise ultimately out of the bank's loan and Stoecker's bankruptcy. But the conduct giving rise to the two claims occurred at different times and involved different acts by different parties: the preferential interest payments were made by Stoecker, the preferential lien filed by the bank. The factual overlap between the claims appears to be small, *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 225 (7th Cir.1993); *McDonald v. Johnson & Johnson*, 776 F.2d 767 (8th Cir.1985)—smaller than in *Himel v. Continental Illinois National Bank & Trust Co.*, 596 F.2d 205, 209 (7th Cir.1979), where this court held that res judicata was not a bar.

At argument moreover the bank's counsel conceded that our decision on res judicata should follow our decision on the interpretation of the settlement agreement. This was a sound concession. Suppose it ultimately is decided that the settlement agreement was not intended to release the trustee's claim to the principal of the loan. Would it not follow that the agreement implicitly barred the bank from interposing a defense of res judicata to an attempt to enforce that claim? For otherwise the intentions behind the agreement would be frustrated.

The judgment of the district court is affirmed insofar as it determines that the bank's proof of claim should not have been disallowed without leave to amend. It is vacated insofar as it determines that the trustee's objection to the claim was barred by the settlement agreement, and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.