**TRILITHIC, INC., Plaintiff,**

v.

**WAVETEK U.S. INC., Defendant.**

**No. IP 97–0421–C M/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 3, 1998.

---

Lynn C. Tyler, Barnes & Thornburg, Indianapolis, IN, for Plaintiff.

Harold C. Moore, Maginot Addison & Moore, Indianapolis, IN, John C. Altmiller, Kenyon & Kenyon, Washington, DC, for Defendant.

### ORDER

McKINNEY, District Judge.

This matter is before the Court on the motion of plaintiff, Trilithic, Inc. ("Trilithic"), for leave to file a supplemental complaint containing additional claims against defendant, Wavetek U.S. Inc. ("Wavetek"), pursuant to Fed.R.Civ.P. 15(d). Rule 15(d) specifically allows for a supplemental pleading "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *Id.* In this case, Trilithic has additional claims based on conduct by Wavetek or its agents that allegedly breached a provision of a non-disclosure agreement entered by the parties in anticipation of settlement negotiations with respect to this patent infringement action.

At issue is whether the Court has jurisdiction to resolve a state-law breach of contract dispute between the parties to this patent infringement action merely on the basis of its connection, as an ancillary contract, to a possible settlement of the underlying action. Trilithic argues that the Court has supplemental and diversity jurisdiction. For the following reasons, the Court finds that it does not, and **DENIES** Trilithic's motion for leave.

### DISCUSSION

Trilithic filed this patent infringement action on March 13, 1997, and by September 9, 1997, the parties were exploring the possibility of settling the controversy between them by an acquisition or merger. In preparation for a corresponding "due diligence" investigation, the parties entered a non-disclosure agreement, a provision of which precluded either from making any employment offers to each other's employees for a specified period of time. Pl's Ex. 1, "Non–Disclosure Agreement By and Between Wavetek Corporation and Trilithic, Inc." at 2, ¶ 6 (the "Non–Disclosure Agreement"). Specifically, each party agreed that "it will not solicit to terminate his or her employment with the other party any person who is an employee or consultant ... of the other party at any time during the period ... commencing on the date of this Agreement and ending on the date of termination of discussions between the parties with respect to a possible Arrangement." *Id.* The parties also agreed not to hire, or offer employment to "anyone who has been an Employee of the other party during the Applicable Period unless either (i) that Employee has been discharged by the other party, or (ii) if that Employee has voluntarily terminated his or her employment with the other party, six (6) months have elapsed from the date of such voluntary termination." *Id.* For purposes of enforcing the agreement, the relevant period in which the soliciting and hiring activity would be prohibited is five years from the date of the Non–Disclosure Agreement, or three years from the date of termination of settlement discussions, whichever is later.

According to Trilithic, on several occasions since the inception of the Non–Disclosure Agreement, Wavetek or its agents have solicited Trilithic sales representatives to terminate their employment with the plaintiff and accept employment with Wavetek. In doing so, Wavetek allegedly breached the "non-solicitation" portion of the Non–Disclosure Agreement. Trilithic asserts that the requirements for supplemental jurisdiction are satisfied because of the "loose factual connection" between this breach of contract claim and the underlying action. *See Ammerman*

*v. Sween,* 54 F.3d 423, 424 (7th Cir.1995). That connection, according to Trilithic, stems from the fact that the parties entered the Non–Disclosure Agreement to facilitate discussions about a possible settlement of the claims in the underlying complaint. But for the underlying patent dispute, Trilithic contends, there would have been no Non–Disclosure Agreement for Wavetek to breach. Accordingly, the requirement that the two claims share a common nucleus of operative facts is thereby met. *See* 28 U.S.C. § 1367.

■ Section 1367 combines the former doctrines of pendent and ancillary jurisdiction into supplemental jurisdiction, which extends "over all claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Courts continue to understand Article III's case or controversy requirement as set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 n. 4 (7th Cir.1995); *see also Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993) (noting that § 1367 merely incorporates discretionary factors of *Gibbs*). Specifically, the Supreme Court stated that federal courts have the power to exercise pendent jurisdiction over state law claims that "derive from a common nucleus of operative fact ... such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Gibbs,* 383 U.S. at 717, 86 S.Ct. at 1135. However, the exercise of that jurisdiction is discretionary and a court's discretion is guided by considerations of judicial economy, convenience and fairness to litigants, as well as the avoidance of needless decisions of state law issues. *Id.* at 726, 86 S.Ct. 1130; 13B Wright, Miller & Cooper, § 3567.1 at 123; *see also Channell v. Citicorp Nat. Servs., Inc.,* 89 F.3d 379, 386 (7th Cir.1996).

■] Here, it is undisputed that the Court has original jurisdiction to resolve the underlying patent infringement action, which is exclusive of any state court jurisdiction. 28 U.S.C. § 1338(a). The allegations of the underlying complaint are that Trilithic is the owner of two patents for radio frequency leakage detection systems for use in the cable television industry. Wavetek manufactures and sells equipment that allegedly infringes both of Trilithic's patents, and Trilithic seeks a permanent injunction against Wavetek from making, using, selling, or offering for sale any device that infringes either of Trilithic's patents. In addition, Trilithic seeks monetary damages to compensate it for the alleged infringement, as well as attorneys' fees and costs. The factual and legal issues involved in the patent case include the proper claim construction of the patents, the validity and enforceability of those claims, and whether Wavetek's products "read on" the patent claims sufficiently to constitute infringement. These are the operative facts of the patent case.

On the other hand, to resolve the state law breach of contract claim, the Court must consider the validity and enforceability of the Non–Disclosure Agreement, the meaning of the non-solicitation clause, the factual issues surrounding the alleged solicitations, and whether any solicitation that occurred actually breached the Non–Disclosure Agreement. These are the operative facts of the breach of contract claim. Despite Trilithic's assertion to the contrary, the claim for breach of the Non–Disclosure Agreement is separate and independent from the patent infringement action. Consequently, it does not fall within this Court's supplemental jurisdiction.

■ The mere fact that the parties entered the Non–Disclosure Agreement as a precursor to a possible merger related to settling the patent case does not provide a sufficient connection to the patent infringement claims so as to form part of the same case or controversy. *See Baer,* 72 F.3d at 1299. Trilithic argues that a loose factual connection exists, and the Court agrees. However, the factual connection occurs among the background facts, as opposed to the operative facts. The difference is crucial to whether the Court has supplemental jurisdiction. The only connection between the two cases is the causal relationship between the patent infringement litigation and the

Non–Disclosure Agreement entered to facilitate settlement discussions relating to that litigation.

In addition, the relationship between the parties stems from Trilithic's attempt to enforce its patents and Wavetek's alleged infringement of them. No evidence has been presented that a merger was being considered prior to the patent litigation. Thus, in a broad or causal sense, the two claims are related. *See Salei v. Boardwalk Regency Corp.*, 913 F.Supp. 993, 998 (E.D.Mich.1996). Yet, under closer scrutiny, it is apparent that the state and federal claims do not share any of the same operative facts. Instead, the facts relevant to a resolution of the patent infringement action are separate and distinct from the facts needed for resolving the breach of contract action. As in *Salei*, the success of the breach of contract action does not depend at all on the success of the patent infringement suit. *See Id.* at 999; *see also Council of Unit Owners v. Recreational Indus., Inc.*, 793 F.Supp. 120, 122 (D.Md.1992) (breach of contract action against defendant in anti-trust litigation is not part of the same case or controversy).

A quick review of the proposed "supplemental complaint" provides an overview of all the operative facts needed to resolve the breach of contract dispute. With the exception of the fourth paragraph, in which Trilithic states that the claims in the supplemental complaint are so related to those in the underlying dispute that they meet the Article III case or controversy requirement, the remainder of the allegations have nothing in common with the patent infringement action. Regardless of whether Trilithic prevails on its patent claim, it will succeed on the breach of contract suit only if it can prove the validity and enforceability of the contract and the fact of breach. At most, it is only the bare fact of prior litigation between the parties that would possibly be relevant in the breach of contract action.

Nor do the issues in Trilithic's breach of contract action implicate the merits of the underlying dispute as evidence of the adequacy of consideration, as in an action for enforcement of a settlement agreement. *See Unelko Corp. v. Prestone Prod. Corp.*, 116 F.3d 237, 241 (7th Cir.1997) (noting that settlement agreements reflect balance of advantages the parties would have faced had they gone to trial); *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir.1995) (determining whether promise to drop claims against defendant was sufficient consideration for settlement agreement); *see also In re Stoecker*, 5 F.3d 1022, 1029 (7th Cir.1993) (noting disparity between claims given up and consideration received under settlement agreement). On the contrary, the agreement here merely anticipates a proposed settlement and cannot even claim as part of its consideration settlement of any claims in the underlying litigation.

[ ] Moreover, when the contract at issue is a settlement agreement, the Supreme Court has found the relationship between it and the underlying litigation too tenuous to support ancillary jurisdiction absent some other basis of jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Under those circumstances, a court may exercise ancillary jurisdiction only if it is necessary to permit resolution in one court of claims that are interdependent, or if it would be necessary to enable the court to manage its proceedings, vindicate its authority or effectuate its decrees. *Id.* at 379–80, 114 S.Ct. 1673. For example, if the court had mandated compliance with the settlement agreement in its order of dismissal, or retained jurisdiction to enforce the settlement agreement, it would have jurisdiction to enforce the agreement. *Id.* at 381, 114 S.Ct. 1673. Here, if the Non–Disclosure Agreement had been incorporated into a protective order of the Court, it is possible the Court would have had jurisdiction to sanction any breach of the agreement in a contempt of court action. However, that is not the case.

Alternatively, Trilithic argues that the Court has an independent basis for jurisdiction over the supplemental complaint for breach of contract because of diversity of citizenship, pursuant to 28 U.S.C. § 1332. As such, Trilithic contends it may supplement its pleadings under Rule 15(d) of the rules of procedure. Wavetek argues against

diversity jurisdiction, and thus the applicability of Rule 15(d).

 The party invoking the court's diversity jurisdiction has the burden of establishing the existence of the jurisdictional amount in controversy. *See Chase v. Shop N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir.1997); *NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 237 (7th Cir.), *cert. denied,* 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995). This burden requires "competent proof" that the jurisdictional amount is met. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). To determine the amount in controversy, "the appropriate focus is on plaintiff's assessment of the value of her case." *Chase,* 110 F.3d at 428. When, as here, the plaintiff seeks injunctive relief the amount in controversy is the value of the right to be protected or the extent of the injury to be prevented. *Freeman v. Sports Car Club of Amer., Inc.,* 51 F.3d 1358, 1362 (7th Cir.1995); *United States v. City of Chicago,* 549 F.2d 415, 424 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977).

It is undisputed that Trilithic and Wavetek are citizens of different states, for purposes of diversity jurisdiction, but the parties disagree about whether the amount in controversy requirement is satisfied. According to Wavetek, Trilithic has the burden of proof regarding the jurisdictional amount, and it has failed to allege a basis for finding that more than $75,000.00 is at issue. Instead, Wavetek argues, Trilithic merely alleged generally that the amount in controversy exceeds $75,000.00. Wavetek points out that the supplemental complaint does not allege that any employee actually left employment with Trilithic as a result of an alleged solicitation, which means that the amount in controversy cannot be based on such departure. Further, because it "has already agreed to the relief that Trilithic seeks," the value of the injunction cannot determine the jurisdictional amount. Def's Brf. at 5.

In response, Trilithic submitted three affidavits, one from each of the two employees allegedly solicited by Wavetek, and one from plaintiff's human resources director regarding the cost of replacing such employees should they depart at Wavetek's behest. The affidavits of the two employees indicate that on more than one occasion, each of them has been invited to consider employment at Wavetek if they quit their jobs with Trilithic. Max F. Ross is an applications engineer at Trilithic, and he reports two solicitations by Wavetek's agents since September 9, 1997. Gregg S. Rodgers, who is an instrument engineering manager, also reports two incidents that he interpreted as solicitations. Both men continue to be employed by Trilithic. Robert J. Eldridge, Trilithic's human resources director, states in his affidavit that the cost of hiring a replacement for either of these engineers, and of training and possibly relocating their replacements, would exceed $120,000.00 each.

██ The fact that neither Mr. Ross or Mr. Rodgers accepted the alleged offers of employment is irrelevant to a determination of the amount in controversy. In a case such as this, when the court is asked to award injunctive relief, it is the plaintiff's valuation of the right to be protected or the injury to be prevented that matters. *See Freeman,* 51 F.3d at 1362. Trilithic has chosen to value the "injury to be prevented" and has based the value on the cost of hiring and training comparable replacement workers. The affidavits provide competent proof that the jurisdictional amount is met, thus affording the Court diversity jurisdiction over the breach of contract claim. However, the significance of this independent basis for jurisdiction is overshadowed by the fact that the claim on which it is based does not belong in this patent infringement action. Even though it sets forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented," it is so unrelated to the underlying litigation that the Court finds it inappropriate to allow supplementation.

██] Courts interpret Rule 15(d) similarly to a Rule 15(a) amendment, and they have discretion to deny leave to amend or supplement if it appears the new claim will complicate or protract the litigation, or contains extraneous matter to the litigation. *See*

*Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir.1996); *In re Wade*, 969 F.2d 241, 250 (7th Cir.1992). The findings made with respect to the inquiry into the Court's supplemental jurisdiction suffice to persuade the Court that the issues in the breach of contract claim should not be added to the patent infringement litigation. The fact that a party has a suit pending against another party in this court does not entitle the first party "to keep adding claims against [the second party] year after year."[1] *See Ford v. Neese*, 119 F.3d 560, 563 (7th Cir.1997). Trilithic and Wavetek are involved in a dispute about the validity and enforceability of Trilithic's patents in this Court. The Court's task is to resolve those issues, not supervise the business relationship between the two litigants. Here, the breach of contract claim is so unrelated to the underlying patent infringement action that it constitutes extraneous matter that will likely protract and complicate the litigation.

## CONCLUSION

For all the reasons stated above, the Court finds that it has no basis on which to exercise supplemental jurisdiction over Trilithic's breach of contract claims. Likewise, the same findings defeat Trilithic's attempt to include the contract action as a supplemental pleading under Fed.R.Civ.P. 15(d), given that diversity jurisdiction is present. Trilithic's motion for leave to supplement the amended complaint is **DENIED**.

---

[1]. Although the pending motion for leave to file a supplemental pleading did not involve "egregious delay" as in the cases cited in *Neese*, the Court is satisfied it has equally good reasons for denying leave to supplement.