In re AMBERJACK INTERESTS, INC., Debtor.

W. Steve Smith, Trustee Plaintiff,

v.

Amber Lounsbury and Jack Lounsbury, Defendants.

Bankruptcy No. 01–42392–7.
Adversary No. 03–3543.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

July 8, 2005.

---

384

Jack D. Nolan, Houston, TX, for debtor.

W. Steve Smith, Houston, TX, trustee.

**MEMORANDUM OPINION ON PLAINTIFF'S REQUEST FOR EXEMPLARY DAMAGES AND ON MOTION OF PLAINTIFF'S ATTORNEY FOR ENHANCED ATTORNEY'S FEES**

JEFFREY E.T. BOHM, Bankruptcy Judge.

## I. BACKGROUND

W. Steve Smith, the trustee (the Trustee) for the estate of the Chapter 7 debtor,

Amberjack Interests, Inc. (the Debtor), filed a complaint, which he later amended, against Amber Lounsbury and Jack Lounsbury (the Defendants), the principals of the Debtor corporation. Trial on this adversary proceeding was held on March 28 and 29, 2005. On April 1, 2005, in an oral ruling issued from the bench, this Court granted much, but not all, of the relief sought by the Trustee in his complaint. Specifically, this Court expressly declined to award exemplary damages. On April 15, 2005, the Trustee, desirous of this Court ruling in his favor on exemplary damages, filed a brief in support of this requested relief (doc. no. 79). Additionally, on April 15, 2005 Charles J. Brink (Brink), counsel for the Trustee, filed his own motion for enhanced attorney's fees (doc. no. 80). On May 20, 2005, the Defendants filed a response opposing the motion (doc. no. 88); they also filed a brief in opposition to the granting of exemplary damages (doc. no. 87). On May 26, 2005, a hearing was held during which oral arguments were presented on these two issues.

This Memorandum Opinion will address only these two discrete issues: enhanced attorney's fees and exemplary damages. This Court addressed all other issues during its bench ruling of April 1, 2005. All findings of fact and conclusions of law which this Court made from the bench on April 1, 2005 are incorporated herein by reference. This Court makes additional findings of fact and conclusions of law in this Memorandum Opinion.

## II. DISCUSSION

### A. Enhanced Attorney's Fees

**1. Brink is entitled to 40% of all assets recovered.**

■■■ This Court signed an order on August 22, 2002 approving the Trustee's application to employ special counsel, Brink, under a contingent fee arrangement (doc. no. 14, in this case). The language in this order states that Brink will receive "40% of all the assets recovered by him, plus expenses upon application made and approved by this Court." *Id.* The judgment issued orally from the bench on April 1, 2005 includes two categories for which the Defendants are jointly and severally liable: (1) $81,818.05 in actual damages incurred by the Debtor's corporation; and (2) $103,772.72 of claims against the Debtor corporation. The $81,818.05 in actual damages constitutes "assets recovered" because that amount is an asset recovered for the bankruptcy estate to replenish funds which the Defendants fraudulently transferred from the corporation. *Id.* The amount of $103,772.72 also constitutes "assets recovered" because an action to pierce the corporate veil brought by the Trustee on behalf of creditors is prosecuted to benefit the bankruptcy estate, and is therefore an asset of the estate. *In re S.I. Acquisition, Inc.,* 817 F.2d 1142, 1149–50 (5th Cir.1987). Here, the Trustee was successful in convincing this Court to pierce the corporate veil of the Debtor corporation and impose personal liability on the Defendants for the claims of the Debtor's creditors who had filed proofs of claim; these claims total $103,772.72. The above referenced two amounts—$81,818.05 and $103,772.72—represent the "assets recovered" on which Brink's 40% fee is to be calculated. *Id.* The 40% fee is therefore calculated as follows: 40% times ($81,818.05 plus $103,772.72) equals $74,236.31.

**2. 11 U.S.C. Section 328 controls court approved fee arrangements, and under this statute, Brink is not entitled to enhanced attorney's fees.**

■■■ Brink is entitled to attorney's fees pursuant to this Court's earlier order

signed on August 22, 2002.[1] However, Brink is not satisfied with the 40% contingency fee, and is requesting an enhancement. Whether an enhancement should be granted is in dispute. Both parties cite Section 330 of the Bankruptcy Code (the Code)[2] as the standard for determining fees for an attorney retained by a trustee. However, the Fifth Circuit has determined that Section 328 of the Code is the controlling provision when reviewing or adjusting professional fees after the bankruptcy court has already approved a professional fee arrangement. *In re National Gypsum Co.*, 123 F.3d 861, 862–63 (5th Cir.1997). The Fifth Circuit further states that Section 328 need not be mentioned in the motion for approval of attorney's fees; if prior approval is granted by the bankruptcy court, then Section 328 controls. *Id.; In re Texas Sec., Inc.*, 218 F.3d 443, 445–46 (5th Cir.2000); *contra In re Circle K Corp.*, 279 F.3d 669 (9th Cir.2001) (respectfully disagreeing with the Fifth Circuit by requiring that Section 328 be explicitly mentioned in an application for attorney's fees to use that provision as the standard for changing those fees post-judgment).

There is no question of this Court's prior approval of Brink's 40% contingency fee arrangement; this approval came on August 22, 2002. Therefore, there is no question that Section 328 governs Brink's request for an enhancement.

■ Section 328 of the Code was added in 1978 to avoid the uncertainty associated with allowing a judge to determine the value of professional services after the work had already been completed. *National Gypsum Co.*, 123 F.3d at 862. Prior to 1978, many able professionals were unwilling to work for bankruptcy estates because their compensation was subject to the wide discretion of the judge when applying Section 330 of the Code. *Id.* Section 328 protects the expectations of professionals by allowing them to enter into firm agreements with trustees by obtaining prior approval from the bankruptcy court. *Id.* at 863. Once a bankruptcy court has approved this fee arrangement, the arrangement is protected by Section 328(a), which states that professional fees may not be adjusted *unless* the terms and conditions of the employment "prove to have been improvident in light of developments

1. Contrary to Brink's unsupported assertion in his motion, he is not entitled to any fees, enhanced or otherwise, under 11 U.S.C. Section 362(h). That particular provision provides that an individual is entitled to recover damages, attorney's fees, and costs, and possibly punitive damages due to a willful violation of the automatic stay. This section is inapplicable in the case at bar because the Debtor is not an individual. *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D.Tex.2003). While the Plaintiff in this adversary proceeding is the Trustee, who is indeed an individual, the Trustee is suing on behalf of the estate of the Debtor corporation and therefore cannot be considered an individual for purposes of obtaining standing under section 362(h). *Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corporate Sys.)*, 175 B.R. 288 (Bankr.D.Mo.1994) (holding that a Trustee representing a Debtor corporation filing suit pursuant to section 362(h) is not acting in his individual capacity and therefore relief under section 362(h) is not available). Even if the Trustee does have standing, the Trustee's complaint makes no allegation about a willful violation of the stay, nor does it seek relief for a willful stay violation. Because no claim for a willful stay violation was pleaded, and because no relief for a willful stay violation was sought, no attorney's fees—and, for that matter, no damages—may be awarded pursuant to section 362(h). *See In re Madison*, 249 B.R. 751, 757 (Bankr.N.D.Ill. 2000) (to successfully plead under section 362(h), complaint must allege defendant had knowledge of the stay and took action to intentionally violate the stay).

2. Throughout this Memorandum Opinion, whenever the word "Section" is used, reference is being made to a Section of the Bankruptcy Code.

not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). The Fifth Circuit is very clear on this point:

> We have interpreted § 328 to limit the power of the bankruptcy court to alter the compensation of professionals: 'the court must therefore set the compensation award either according to § 328 or § 330. *If prior approval is given to a certain compensation, § 328 controls and the court starts with that approved compensation, modifying it only for developments unforeseen when originally approved.'*

*In re Texas Sec., Inc.*, 218 F.3d 443, 445 (5th Cir.2000) (citing *In the Matter of National Gypsum Co.*, 123 F.3d 861, 862–63 (5th Cir.1997)) (emphasis added).

■ In the case at bar, it is clear that the Trustee reached an agreement with Brink, approved by this Court, for a 40% contingent fee. In order to change this amount after judgment, Section 328(a)'s stringent standard must be applied. The Fifth Circuit requires that:

> Once the bankruptcy court has approved a rate or means of payment, such as a contingent fee, the court cannot on the submission of the final fee application instead approve a 'reasonable' fee under § 330(a), unless the bankruptcy court finds that the original arrangement was improvident due to unanticipated circumstances as required by § 328(a).

*In re Texas Sec., Inc.*, 218 F.3d 443, 445–46 (5th Cir.2000).

■ This Court has no choice but to apply the Section 328(a) standard in deciding whether to change Brink's fee arrangement. Because neither the Trustee nor Brink has provided any evidence that indicates any unforeseen events necessitating an increase in pay for Brink, this Court will not infer any. Brink has enjoyed the benefit of Section 328(a) in protecting his fee from a potential reduction. Conversely, Brink must also accept Section 328(a)'s rigid standard in attempting to enhance his fee. Accordingly, this Court finds that Brink has not satisfied the standard required by Section 328(a) and, therefore, he is not entitled to an enhancement.

**3. Alternatively, even if 11 U.S.C. Section 330 applies instead of 11 U.S.C. Section 328, Brink would still not be entitled to enhanced attorney's fees.**

In the alternative, if this Court were to apply Section 330 instead of Section 328 as the standard for calculating attorney's fees for Brink, an upward adjustment would still not be justified. Indeed, in Brink's case, the proper application of Section 330 results in a figure lower than the 40% contingent fee to which he has already agreed and which has been approved by this Court.

**a. The formula under Section 330(a) for calculating professional fees**

■ Section 330(a) of the Code instructs that payment to professionals employed by the bankruptcy estate be calculated by adding (1) the reasonable compensation of actual and necessary services; and (2) actual and necessary expenses. 11 U.S.C. § 330(a). Since the Code itself provides only general guidance with regard to reasonable compensation, the United States Supreme Court and the Fifth Circuit have interpreted how Section 330(a) is to be applied. *In re Property Co. of America Joint Venture*, 110 B.R. 244, 250–51 (Bankr. N.D.Tex.1990) (citing *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974); *Pennsylvania v. Delaware Valley Citizens' Council for Clean*

*Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)).

 The Supreme Court has held that the lower courts must first determine the "lodestar" in calculating reasonable compensation. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The lodestar is calculated by first ascertaining the reasonable prevailing professional rate and then multiplying this figure against a reasonable number of hours expended. *Id.* The Supreme Court has also held that the lower courts may use factors such as those discussed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), to adjust the lodestar. These factors are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The Supreme Court in *Blanchard,* however, noted that no one factor is a substitute for the original lodestar figure.

 The Fifth Circuit has stated that the lodestar guidelines outlined above should be used for calculating fee awards in bankruptcy cases. *Lawler v. Teofan (Matter of Lawler),* 807 F.2d 1207, 1211 (5th Cir.1987); *In re First Colonial Corp. of America,* 544 F.2d 1291, 1299 (5th.Cir.1977). Additionally, the Fifth Circuit has emphasized that the bankruptcy courts should pay special heed to the following *Johnson* factors when potentially adjusting the lodestar:

(1) the time and labor involved;

(2) the customary fee;

(3) the amount involved and the results obtained; and

(4) the experience and reputation of counsel;

*Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 583 (5th Cir.1980) (citing *Johnson,* 488 F.2d 714).

 When adjusting the lodestar, however, the Supreme Court has held that the lodestar calculation is strongly presumed to be a reasonable fee, and that adjustments can only be made in *rare and exceptional* cases supported by specific evidence. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. at 565, 106 S.Ct. 3088 (citing *Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 79 L.Ed.2d 891). The Supreme Court also has held that after the lodestar is calculated, the courts must presume that factors such as novelty and complexity of the issues, special skill and experience of counsel, quality of representation, and results obtained are already considered to be included in the lodestar, and should generally not be used as enhancement factors. *Id.* In sum, total attorney compensation under Section 330 is determined by adding (1) the lodestar; (2) a potential enhancement; and (3) expenses.

## b. Lodestar and expenses relating to Brink's employment

This Court does not disagree with Brink's pre-enhancement lodestar calculation and expenses. His fee of $300 per hour is justified under the lodestar standard and the factors delineated above as the reasonable and prevailing rate for an attorney with Brink's level of experience. Brink is a seasoned bankruptcy attorney with over 34 years of experience and has achieved success in piercing the corporate veil in this case, imposing personal liability on the Defendants for several fraudulent transactions. Brink estimated his expended hours to be approximately 221.38,[3] which is also reasonable for the length and complexity of this case. Brink has also achieved a judgment that will probably allow creditors to be paid in full, possibly with interest.

Brink's lodestar calculation is arrived at by multiplying $300 by 221.38 hours, which results in approximately $66,415. Brink's expenses of $3,037.80 are also reasonable considering the length and complexity of this case, resulting in total fees and expenses of $69,452.80.

## c. Brink's requested enhancement and the factors that this Court should consider in evaluating Brink's request

Brink, however, requests $132,830.00 for his legal services (not including the expenses of $3,037.80). He calculates this amount by multiplying the lodestar fee amount of $66,415.00 by an enhancement multiple of 2. This Court disagrees with Brink's application of this final step.

■■■ *In re Farah*, 141 B.R. 920, 924–25 (Bankr.W.D.Tex.1992), helps shed light on the limited set of circumstances that justify an enhancement of the lodestar within the bankruptcy context under Section 330. The court in *Farah* focused primarily on determining whether the results obtained by counsel were "rare and exceptional" in deciding whether to enhance fees. *Id.* at 925; see *Rose Pass Mines Inc. v. Howard*, 615 F.2d 1088, 1090 (5th Cir.1980); *Wolf v. Frank*, 555 F.2d 1213, 1218 (5th Cir.1977); *In re Hunt*, 124 B.R. 263, 266 (Bankr. S.D.Ohio 1990); *In re Morris Plan Co.*, 100 B.R. at 451 (Bankr.D.Iowa 1989). The court stated that two major factors to consider in analyzing the results obtained include whether a superior level of expertise was demonstrated by counsel and whether creditors had been paid in full by the judgment. *In re Farah*, 141 B.R. at 924–25. The debtor's counsel in *Farah* was able to negotiate the forgiveness of *several million dollars* worth of debt while defending the estate from several lift stay motions, among other extraordinary results. *Id.* In addition, the debtor's estate in *Farah* was able to pay off all creditors and much of their attorney's fees while successfully retaining assets worth $3.5 million for the estate. *Id.* at 925–26. Initially, the estate in *Farah* had only expect-

---

**3.** Brink requests $132,830.00 in enhanced attorney's fees. This figure represents a lodestar value (reasonable rate multiplied by reasonable hours expended) multiplied by an enhancement multiplier of 2 (doc. no. 80). Brink states that his reasonable hours expended were 222. He also states that his reasonable fee is $300/hour. Brink then goes on to state that his lodestar amount is $66,415.00. These figures are mathematically inconsistent. If Brink's lodestar is calculated using his figures ($300 multiplied by 222 hours), the lodestar amount is $66,600.00. If this figure is multiplied by an enhancement multiplier of 2, the result is $133,200.00. This figure is inconsistent with the $132,830.00 he requests in his brief and proposed order. In order to reconcile these figures, the reasonable hours expended was reduced from 222 to 221.38. This figure is multiplied by $300 to reach a lodestar of $66,415.00. This resulting figure is then multiplied by the multiplier of 2 to reach $132,830.00, his original figure.

ed to keep $110,000 in exempt property. *Id.* at 924–25.

Counsel in *Farah* had calculated a lodestar amount of only $119,640.50, and the bankruptcy court decided that based on his unusual results, he deserved a significantly higher amount. *Id.* at 926. The court held that the debtor's counsel deserved a multiple of 2 because of his vastly superior skills in representing the debtor and the rare and exceptional results obtained by extinguishing millions of dollars worth of debt. *Id.* at 929.

The court in *Farah* further stated that the risk of non-payment could also be considered as an enhancement factor. *Id.* However, the court noted that the lodestar amount itself can adequately compensate for this risk unless that risk is very high given "extraordinarily" complex issues of fact and law. *Id.* The court in *Farah* determined that this case was not sufficiently complex to warrant an enhancement on this factor alone. *Id.*

**d. The results obtained by Brink do not rise to a level justifying enhanced attorney's fees.**

■ The handful of reasons which Brink gives to justify enhancement are: (1) lack of funds or assets in the estate to pay for attorney's fees; (2) lack of desirability of the case; (3) lack of cooperation of Defendants; (4) success in piercing the corporate veil; (5) length of trial; (6) expenses and hours expended; and (7) results obtained.

However, the court in *Delaware Valley* explained that factors such as the complexity of the case, the counsel's skill, and the results obtained are to be presumed as being included in the lodestar amount, not as enhancement factors. *Delaware Valley*, 478 U.S. at 565, 106 S.Ct. 3088. Brink's reasons for enhancement fall within this umbrella of factors. Therefore, his reasons should not be considered as en-

hancement factors unless he meets the requirements laid out in *Farah* for rare and exceptional cases.

When applying *Farah* in analyzing Brink's reasons for enhancement, an enhancement is not warranted. The debtor's counsel in *Farah* obtained a multi-million dollar result for his client against a lodestar fee of around $120,000. *In re Farah*, 141 B.R. at 926. Brink's results, although impressive, were merely in the neighborhood of $185,000 against a lodestar fee of approximately $66,000. Counsel in *Farah* produced a rare and exceptional result that was not adequately compensated by his proportionately tiny lodestar, in which case a multiple of 2 was warranted. *Id.* at 929. Brink's results, in comparison, are much more modest and do not warrant an enhancement.

Further, this particular adversary proceeding was not sufficiently complex to warrant an enhancement based on the risk of non-payment factor detailed in *Farah*. The *Farah* court determined that risk of non-payment is adequately compensated by the lodestar alone unless the case proves to be *extraordinarily* complex. *Id.* The dispute between the Trustee and the Defendants in this lawsuit was not extraordinarily complex.

Brink cites two cases in support of an enhancement multiple. The first case, *In re Miniscribe Corp.*, 309 F.3d 1234 (10th Cir.2002), supports a 2.57 multiple when enhancing an attorney's fees calculated under the lodestar. There, the court held the attorney in that case produced results which were "sufficiently extraordinary" to support this multiple. *Id.* at 1239.

In *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990) (citing *Norman*, 836 F.2d at 1302), the court denied the attorney an enhancement because the court determined that

his work was not "out of the ordinary, unusual, or rare." The court in *Grant* further stated that even *exceptional* results do not warrant an enhancement of the lodestar unless evidence in the record points to superior representation that one would not reasonably expect. *Id.*

In his motion, Brink does not discuss how his reasons for an enhancement are supported by the cases he himself has mentioned. *Grant* and *Miniscribe* are unpersuasive in supporting a multiple of 2. *Grant* and *Miniscribe* seem to indicate that results achieved must be unusual or rare to support any sort of enhancement, and this Court is not persuaded that Brink's results were such. Brink's results were indeed very good: he was able to obtain a judgment that will probably pay off all the creditors, and was able to unearth records which pierced the corporate veil. Nevertheless, *Grant* itself states that exceptional results are adequately compensated by the lodestar unless counsel's performance was superior and unexpected. *Grant*, 908 F.2d at 879. *Miniscribe* supports a multiple of 2.57 for a highly extraordinary result. *In re Miniscribe Corp.*, 309 F.3d at 1245. This Court does not find Brink's results to be "highly extraordinary." Furthermore, *Miniscribe* is a Tenth Circuit case which does not seem to be supported by the Fifth Circuit's standard for enhancing fees as discussed in both *In re Property Co.* and *Farah.*

### e. Conclusion

Section 328 of the Bankruptcy Code controls Brink's initial agreement of a 40% contingent fee. This section justifies a revision only if unexpected events necessitate an increase in pay, which this Court does not find here. Further, even if Section 330 is applied, the standard for an enhancement is not met. If Section 330 is applied properly, a fee amount of

$66,415.00 is warranted (lodestar without an enhancement). When using the original 40% contingent fee arrangement against the total judgment of $185,590.77 ($103,772.72 plus $81,818.05), the amount of compensation is $74,236.31. This amount is greater than the amount that Brink would recover under Section 330 (i.e.$66,415.00), and is the appropriate level of compensation for Brink's successful efforts.

## B. Exemplary Damages

### 1. Bankruptcy courts may assess exemplary damages

 A bankruptcy court may rely on state law to award exemplary damages where the Code does not specifically allow such measures. *In re Landbank Equity Corp.*, 83 B.R. 362, 382 (E.D.Va.1987); *see also In re A.G. Financial Service Center, Inc.*, 395 F.3d 410, 414 (7th Cir.2005); *In re Jackson*, 309 B.R. 33, 38 (Bankr. W.D.Mo.2004); *In re Criswell*, 52 B.R. 184, 204–05 (Bankr.E.D.Va.1985). Under Texas law, courts of equity have the power to assess exemplary damages. *In re Performance Nutrition, Inc.*, 239 B.R. 93, 115 (Bankr.N.D.Tex.1999). Bankruptcy courts are certainly courts of equity, *United States v. Energy Resources Co.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990); and in Texas, bankruptcy courts have awarded exemplary damages against corporate officers who have breached their fiduciary duties to debtor corporations in Chapter 7. *See In re Performance Nutrition, Inc.*, 239 B.R. at 116; *see also In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 275 ·(Bankr.N.D.Tex.2003) (holding exemplary damages would be justified had the trustee recovered for breach of fiduciary duty). Bankruptcy courts in other states have awarded exemplary damages under similar circumstances. *Donaldson v. Bernstein*, 104 F.3d 547, 557 (3rd

Cir.1997); *In re H. King & Associates,* 295 B.R. 246, 277 (Bankr.N.D.Ill.2003).

■■■ Rule 54(c) of the Federal Rules of Civil Procedure, incorporated into adversary proceedings in bankruptcy courts by Bankruptcy Rule 7054(a), provides that exemplary damages need not be specifically pled in the plaintiff's complaint if the facts alleged support the award of these damages. FED. R. CIV. P. 54(c); *Hays v. State Farm Mut. Auto. Ins. Co. (In re Hannover Corp. of Am.),* 67 F.3d 70, 75 (5th Cir., 1995); *Guillen v. Kuykendall,* 470 F.2d 745, 748 (5th Cir.1972); *In re Landbank Equity Corp.,* 83 B.R. at 376. Nor is the plaintiff required to specifically cite grounds for the recovery of exemplary damages in the complaint. *In re Landbank Equity Corp.,* 83 B.R. at 376. In addition, the complaint does not need to specify the exact denomination of requested exemplary damages. *Guillen,* 470 F.2d at 748. In the present case, the Trustee's amended complaint alleges breach of fiduciary duties and requests the imposition of exemplary damages. The Trustee's request for exemplary damages, therefore, meets the requirements of Rule 54(c).

■■■ Because the Code does not expressly provide for exemplary damages under the causes of action asserted in this particular adversary proceeding, Section 41 of the Texas Civil Practice and Remedies Code governs the imposition of such an award. *In re Landbank Equity Corp.,* 83 B.R. at 376; Tex. Civ. Prac. & Rem. Code Ann. § 41.003 (Vernon 1997). Exemplary damages are only available where a plaintiff has suffered actual loss or injury. *Mack v. Newton,* 737 F.2d 1343, 1367 (5th Cir.1984). This suit was commenced in April of 2003 (doc. no. 1), prior to the effective date of the 2003 amendments of

the statute[4], and, therefore, this action is controlled by the 1997 version of Section 41. *See Roth v. Mims,* 298 B.R. 272, 297 (N.D.Tex.2003) (holding that a case which commenced prior to the 2003 amendment of Section 41 of the Texas Civil Practice and Remedies Code Annotated is controlled by the 1997 version of the statute). This statute allows courts to impose exemplary damages where the claimant's harm results from: "(1) fraud; (2) malice; or (3) willful act or omission or gross neglect in wrongful death actions brought by or on behalf of a surviving spouse or heirs of the decedent's body, under a statute enacted pursuant to Section 26, Article XVI, Texas Constitution." Tex. Civ. Prac. & Rem. Code Ann. § 41.003.

■■■ Because fraud is often difficult to prove, courts justify awarding exemplary damages upon a showing of malice. *See Roth,* 298 B.R. at 297. A plaintiff is required to establish that the defendant acted with malice by "clear and convincing evidence." Tex. Civ. Prac. & Rem.Code Ann. § 41.003(c). This standard of proof is described as "falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings." *State v. Addington,* 588 S.W.2d 569, 570 (Tex. 1979).

Under the 1997 version of the statute, "malice" is defined as:

(A) a specific intent by the defendant to cause substantial injury to the claimant; or

(B) an act or omission: (i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii)

---

4. Effective date of Section 41.003 of the Texas Civil Practice & Remedies Code was September 1, 2003. Tex. Civ. Prac. & Rem.Code § 41.003 (2003).

of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem.Code Ann. § 41.001. In *Roth*, the court held the defendant breached his fiduciary duty to the debtor corporation by transferring corporate funds for the payment of personal obligations and generally frittering away the corporation's assets on unnecessary litigation. *Roth*, 298 B.R. at 284. The court held this breach was carried out with "malice" within the meaning of Section 41.003 because the debtor acted with a great degree of risk, potentially harming the corporation, its shareholders, and its creditors. *Id.* at 298. The court awarded $1 million in exemplary damages. *Id.*

 As the trier of fact in the suit at bar, this Court is in a unique position to assess the demeanor of witnesses and determine whether the Defendant's conduct was committed with malice. *See Landbank Equity Corp.*, 83 B.R. at 382. In the ruling delivered on April 1, 2005, this Court held that the Defendants' misappropriation of corporate funds was a violation of their fiduciary duties and led to actual damages. (Tr., April 1, p. 16, lines 22–25). Such conscious indifference to their fiduciary duties constitutes "an extreme degree of risk, considering the probability and magnitude of the potential harm to others" within the meaning of Section 41.001. Tex. Civ. Prac. & Rem.Code Ann. § 41.001. Further, the Defendants manifested a subjective awareness of the risks associated with breaching fiduciary duties by retaining counsel to assist in setting-up their corporation. (Tr., April 1, p. 6, lines 2–3). As a result, evidence of the Defendants' malice is clear and convincing.

## 2. Assessment of exemplary damages

 The Texas Civil Practice and Remedies Code limits the amount of exemplary damages which a court may award. Tex. Civ. Prac. & Rem.Code Ann. § 41.008. The exemplary damages are capped at the greater of:

(1)(A) two times the amount of economic damages; plus

 (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or

(2) $200,000.

*Id.* Section 41.010 instructs the Court to consider the purpose of exemplary damages before making an award. *Id.* at § 41.010. Exemplary damages function to deter and punish. *Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 801, 804 (5th Cir. 1983). The amount 'awarded must be reasonably proportional to actual damages, though no set ratio exists for measuring reasonableness. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). Thus, courts have discretion to assess damages which reflect the particular facts of the case. *Id.* In determining the reasonableness of an award, courts weigh six factors. *Id.* They are:

(1) the nature of the wrong;

(2) the character of the conduct involved;

(3) the degree of culpability of the wrongdoer;

(4) the situation and sensibilities of the parties concerned;

(5) the extent to which such conduct offends a public sense of justice and propriety; and

(6) the net worth of the defendant.

Tex. Civ. Prac. & Rem.Code Ann. § 41.011; *Alamo Nat'l Bank*, 616 S.W.2d at 910. Exemplary damages are "presumptively reasonable" if the award is within the statutory limits. *Peco Const.*

394

*Co. v. Guajardo*, 919 S.W.2d 736, 742 (Tex. App.—San Antonio 1996, *writ denied*).

■ Under Section 41.008 of the Texas Civil Practice and Remedies Code, this Court may assess a maximum of $371,181.54 in exemplary damages against the Defendants. Tex. Civ. Prac. & Rem. Code Ann. § 41.008. This figure represents a doubling of both the $81,818.05 in actual damages and the $103,772.72 in proofs of claims against the Debtor corporation to be paid through the Trustee and for which the Defendants were made personally liable by piercing the corporate veil. However, the Court chooses not to impose the maximum amount, but rather one half of the actual damages. Accordingly, this Court hereby grants exemplary damages in the amount of $92,795.39, equal to one half of the sum of the actual damages and proofs of claim. This is a conservative figure that should sufficiently punish the Defendants and deter future conduct of this deplorable nature.

### a. Reasonableness under Texas law

This award is reasonable under the *Alamo National Bank* factors described above. First, as to the nature of the wrong, the Defendants exploited their fiduciary status to quickly funnel money out of the Debtor corporation in order to avoid paying a judgment. This wrong is worthy of punishment.

The character of this conduct, degree of culpability of the wrongdoers, and particular situation of the parties concerned also warrant exemplary damages. In the ruling issued on April 1, this Court found the Defendants guilty of "blatant lies and blatant misconduct." (Tr., April 1, p. 21, line 25). Particularly appalling was Mrs. Lounsbury's open admission at trial that she knowingly lied while under oath at the first meeting of creditors. She stated, "I knew at the time that the statements I made were untrue." (Tr., April 1, p. 21, lines 9–10). It is difficult to imagine a more egregious disregard for the sanctity of the court and the privilege of the bankruptcy system.

■ "Debtors who file voluntary petitions under chapter [sic] 7 of the Bankruptcy Code receive the safeguards provided by the Code, but in return must also assume the responsibilities the Code imposes." *In re J.A.V. Ag., Inc.*, 154 B.R. 923, 927 (Bankr.W.D.Tex.1993). The Defendants exploited the safeguards of the system to enable the use of the Debtor corporation as their personal coffer. The Defendants' conduct was particularly offensive to a public sense of justice and propriety. Mrs. Lounsbury's excuse of ignorance of the law is unacceptable, particularly since she had access to counsel. As the Supreme Court said in *Upton v. Tribilcock*, 91 U.S. 45, 51, 23 L.Ed. 203 (1875):

> If ignorance of law was admitted as a ground of exemption, the court would be involved in questions which it were scarcely possible to solve, and which would render the administration of justice next to impossible; for in almost every case ignorance of law would be alleged, and the court would, for the purpose of determining this point, be often compelled to enter upon questions of fact insoluble and interminable.

Finally, with respect to their financial condition, evidence was introduced at trial that the Defendants have personal assets of approximately $2 million. (Tr., March 28, Vm. 3, p. 231, lines 13–16). Given this net worth, an award of $92,795.39 is reasonable.

An award of $92,795.39 is also reasonable because the ratio between actual and exemplary damages comports with the exemplary damages issued by other bankruptcy courts. In *Roth*, the reviewing

court held the bankruptcy court's award of $1 million in exemplary damages was reasonable given the $1.7 million in actual damages assessed in that case. 298 B.R. at 298. The behavior that the court sought to punish in *Roth* bears a strong resemblance to the Defendants' acts. In the case of *Landbank Equity Corp.,* the court awarded exemplary damages at three-times the amount of actual damages. 83 B.R. at 382. Thus, in the present case, this Court's award of exemplary damages equal to one half of the total amount of actual damages is in accordance with Texas law and bankruptcy court precedent.

**b. Satisfaction of constitutionality**

■■■■■ Although an award may fall within state statutory limits, it also must satisfy the test of constitutionality so as not to violate a party's substantive due process rights. *Citizens Nat'l Bank v. Allen Rae Investments, Inc.,* 142 S.W.3d 459, 485 (Tex.App.—Fort Worth 2004, *no writ*); *see BMW of N. Am., Inc.,* 517 U.S. 559, 574–75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *see also Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 45 (Tex.1998). In *BMW,* the court identified three "guideposts" for identifying exemplary damage awards which were "grossly excessive." *BMW,* 517 U.S. at 575, 116 S.Ct. 1589. These include: (1) the degree of reprehensibility of the defendant's conduct, (2) the comparison between actual and exemplary damages; and (3) the relation between the amount awarded and the amount authorized under similar circumstances. *See Id.* at 575, 116 S.Ct. 1589; *see also Citizens,* 142 S.W.3d at 485–86. For the same reasons stated above, the award of $92,795.39 in exemplary damages satisfies the *BMW* guideposts.

### III. CONCLUSION

In sum, the Court awards to the Trustee the following amounts: $74,236.31 in attorney's fees; $3,037.80 in expenses; and $92,795.39 in exemplary damages. Further, this Court orders the Trustee to remit to Brink the attorney's fees of $74,236.31 and the expenses of $3,037.80. Additionally, by virtue of its holding that the corporate veil of the Debtor is pierced, this Court orders that the Lounsburys are jointly and severally liable for all claims against the Debtor's estate. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law[5] pursuant to FED. R. CIV. P. 52, as incorporated into adversary proceedings in bankruptcy cases by FED. R. BANKR. P. 7052. The Court will issue a separate judgment consistent with this Memorandum Opinion.

### JUDGMENT

On March 28–29, 2005, trial was held in the above-styled adversary proceeding, on the First Amended Complaint filed by W. Steve Smith, Chapter 7 Trustee (the Trustee), on behalf of the creditors of the estate of Amberjack Interests, Inc. (the Debtor). All parties appeared in person and through counsel and announced ready for trial.

This proceeding involves claims by the Trustee against Defendants Amber Lounsbury and Jack Lounsbury for fraudulent transfers from the Debtor, breach of fiduciary duties as officers and directors and sole shareholders of the Debtor, and conspiracy to breach fiduciary duties both to the creditors of the Debtor and to the bankruptcy estate. In his amended com-

---

**5.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

plaint, the Trustee sought actual damages, exemplary damages, and attorney's fees and costs. Based upon the conduct of Amber Lounsbury and Jack Lounsbury, the Trustee also requested that this Court pierce the corporate veil of the Debtor and hold Amber Lounsbury and Jack Lounsbury individually liable for the claims filed by creditors of the Debtor against the estate.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O). Venue for this proceeding is proper in this Court under 28 U.S.C. § 1409(a). The Court made oral findings of fact and conclusions of law from the bench on April 1, 2005, and makes additional findings of fact and conclusions of law pursuant to Fed. R. of Bankr.P. 7052 in a separate Memorandum Opinion filed simultaneously with this Judgment.

Pursuant to the findings of fact and conclusions of law articulated by the Court from the bench on April 1, 2005 and in the Memorandum Opinion filed on the docket simultaneously with this Judgment, the Court awards monetary judgment in favor of the Trustee as follows:

1. The amount of $3,776.55 in actual damages against Amber Lounsbury and Jack Lounsbury, jointly and severally, for pre-petition payments made by customers of the Debtor corporation directly to Amber Lounsbury, when these payments should have been made to the corporation, in violation of § 548 of the Code and in violation of Tex. Bus. & Com. Code Ann. § 24.001 et. seq. (TUFTA), made applicable by § 544 of the Code;

2. The amount of $71,949.79 in actual damages against Amber Lounsbury and Jack Lounsbury, jointly and severally, for pre-petition fraudulent transfers within the year preceding the filing of the Debtor's petition in violation of § 548 of the Code and in violation of the TUFTA;

3. The amount of $2,994.21 in actual damages against Amber Lounsbury and Jack Lounsbury, jointly and severally, for conversion of assets of the bankruptcy estate in violation of their duties imposed by § 521 of the Code, including but not limited to, the duties to preserve the assets of the Debtor and to cooperate in the administration of the estate;

4. The amount of $2,537.50 in actual damages against Amber Lounsbury and Jack Lounsbury, jointly and severally, for conversion of a computer belonging to the Debtor's bankruptcy estate in violation of their duties imposed by § 521 of the Code, including but not limited to, the duties to preserve the assets of the Debtor and to cooperate in the administration of the estate;

5. The amount of $560.00 in actual damages against Amber Lounsbury and Jack Lounsbury, jointly and severally, for conversion of a returned deposit under a lease that was an asset of the Debtor's bankruptcy estate in violation of their duties imposed by § 521 of the Code, including but not limited to, the duties to preserve the assets of the Debtor and cooperate in the administration of the Debtor's bankruptcy estate;

6. The amount of $92,795.39 in exemplary damages against Amber Lounsbury and Jack Lounsbury, jointly and severally, pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 41.001 et seq.

7. The amount of $74,236.31 against Amber Lounsbury and Jack Lounsbury, jointly and severally, representing the 40% contingency fee which this Court approved in its order of August 22, 2002.

8. The amount of $3,037.80 against Amber Lounsbury and Jack Lounsbury, jointly and severally, representing the reasonable expenses incurred in the prosecution of this adversary proceeding against the Lounsburys which this Court approved in its order of August 22, 2002.

The Court further finds that the Amber Lounsbury and Jack Lounsbury used the Debtor as both a sword and a shield to justify wrongdoing. Specifically, to evade payment of the final judgment $99,613.90 owed to Paige Herbert, a judgment creditor of the Debtor corporation, Amber Lounsbury and Jack Lounsbury funneled money out of the Debtor corporation to denude it so that there would be no assets available to pay this judgment.

The Court further finds that the Trustee, as representative of the creditors of the estate, is entitled to equitable relief based upon the intentional and deliberate acts of Amber Lounsbury and Jack Lounsbury. The Lounsburys perpetrated a fraud upon Paige Herbert as more specifically delineated in this Court's pronouncement on April 1, 2005 of its judgment and findings of fact and conclusions of law on the record.

The Court further finds that the Trustee, as representative of the creditors of the estate, is entitled to further equitable relief based upon this Court's finding that Amber Lounsbury and Jack Lounsbury, as the sole officers and shareholders of the Debtor, failed to maintain corporate formalities or separate the business of the corporation from their own. The Debtor is, in fact, a sham corporation that is the alter ego of Amber Lounsbury and Jack Lounsbury, as more specifically delineated in this Court's April 1, 2005 pronouncement on the record of its judgment and findings of fact and conclusions of law on the record.

The Court further finds that Amber Lounsbury knowingly lied under oath at the first meeting of creditors and that she admitted so doing in open court at the trial of this adversary proceeding. The Court further finds that Amber Lounsbury's lies related to issues that were material and involved either the administration of this Chapter 7 estate and/or her improper disposition of assets of the estate.

It is therefore ORDERED that the corporate veil of the Debtor is hereby pierced and the sole shareholders of the corporation, Amber Lounsbury and Jack Lounsbury, are jointly and severally liable for all claims against the Debtor's estate, which presently total $103,772.72, representing the three proofs of claim filed against the Debtor.

It is further ORDERED that all assets to which Amber Lounsbury and Jack Lounsbury hold title in their individual capacity are now deemed to be assets of this Chapter 7 estate until such time as all claims against the Debtor's estate, which presently total $103,772.72, are paid in full.

It is further ORDERED that Amber Lounsbury and Jack Lounsbury are jointly and severally liable to the Trustee for $81,818.05 in actual damages for pre– and post-petition transfers as more specifically set forth above (representing the sum of $3,776.55 + $71,949.79 + $2,994.21 + $2,537.50 + $560.00).

It is further ORDERED that Amber Lounsbury and Jack Lounsbury are jointly and severally liable to the Trustee for $92,795.39 in exemplary damages.

It is further ORDERED that Amber Lounsbury and Jack Lounsbury are jointly and severally liable to the Trustee for $74,236.31 in attorney's fees pursuant to this Court's order of August 22, 2002.

It is further ORDERED that Amber Lounsbury and Jack Lounsbury are jointly and severally liable to the Trustee for $3,037.80 in expenses for the prosecution of this adversary proceeding.

It is further ORDERED that the Trustee is authorized to pay to Brink his attorney's fees of $74,236.31 and his expenses of $3,037.80.

It is further ORDERED that Amber Lounsbury and Jack Lounsbury are subject to the duties imposed by § 521 of the Code, including but not limited to, the duties to preserve the assets of the Debtor and to cooperate in the administration of the estate when dealing with their personal assets made part of the Debtor's estate by this Judgment.